# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 10 CR 50070-1 |
| | ) | |
| GALIO E. DEJESUS ORTIZ | ) | |

FREDERICK J. KAPALA, District Judge:

At the sentencing hearing for defendant, Galio E. DeJesus Ortiz, the court overruled the government's objection to the failure to include in the presentence investigation report a 2-level increase, pursuant to U.S.S.G. § 2D1.1(b)(12), which applies if "the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." This opinion sets forth written reasons for the court's ruling.

## I. BACKGROUND

The facts of this case are relatively straightforward and were largely admitted by defendant as part of his plea agreement. In October 2010, defendant's cellular telephone conversations were being monitored by law enforcement pursuant to this court's order authorizing the interception of wire communications. Beginning on October 21, 2010, and continuing through October 26, 2010, defendant had several phone conversations with two individuals (hereinafter "Individuals A and B") during which he discussed obtaining a shipment of approximately 82 kilograms of marijuana that was being transported from Denver, Colorado, to Rockford, Illinois.

During one conversation on October 21, Individual A told defendant in coded language that the 82 kilograms of marijuana were ready to be delivered, explained to defendant that the plan was to obtain a license plate for the trailer transporting the shipment on Monday, October 25, 2010, and

advised defendant that the delivery would arrive in Rockford on Monday or Tuesday. At that time, Individual A also asked defendant: "Do you think it could be done over there at that house," to which defendant responded: "Yes, we are still set on that." Individual A then questioned: "It would only be a matter of fixing the window, right? So it looks liveable there for a while." Defendant responded: "That's fine. That's fine. I . . . I will fix it and everything . . . everything will be fine." Defendant later reiterated that "I'll start doing repairs to the house so . . . so it looks like there's movement there." In his plea agreement, defendant admitted that he understood Individual A to be talking about a house in the 2800 block of Preston Avenue in Rockford, Illinois, that defendant controlled access to, but that was titled in the name of defendant's girlfriend's sister.[1] The house on Preston Avenue was not occupied by anyone and was in a general state of disrepair, including having a broken window, no kitchen cabinets, and missing pipes. Although there was some testimony at the sentencing hearing that defendant was making repairs to the house, there is no evidence that any repairs had been made and, more importantly, defendant admitted as part of his plea agreement that he was using that residence solely for the purpose of his marijuana distribution activities. At the sentencing hearing, DEA Agent Hopkins testified that, to the best of his knowledge, this was the first time defendant used the property for distributing a controlled substance.

On October 25, 2010, at approximately 5:52 p.m., defendant received a phone call from Individual B who asked defendant if "the house will be ready tomorrow." Defendant said that he would try to get some plastic to put on "that window," and that "tomorrow I'll go mow the lawn and

---

[1] The plea agreement stated that the Preston house was "titled in the name of one of defendant's relatives," but this seems to be inaccurate since it was owned by the sister of defendant's girlfriend, who was not legally a relative of defendant.

everything there." Individual B also informed defendant that the price of the marijuana had been increased by the supplier. Later that day, defendant called Individual A to confirm that they were going to meet the following day. Individual A told defendant they were on schedule to meet the next day and that he would call him two hours prior to arriving.

On October 26, 2010, at approximately 8:54 a.m., defendant received a phone call from Individual B, who told defendant to call "Chavo" and then meet him at the gas station because he needed directions. Defendant drove to the gas station where he observed Chavo driving a burgundy Grand Prix and codefendant Leiva driving a brown Ford pickup truck with a flat trailer carrying a holding tank which contained the marijuana that defendant intended to purchase from Chavo. Defendant led Chavo and Leiva to the house on Preston Avenue, and they all went inside. When defendant later attempted to leave the residence, he was stopped by police officers.

## II. ANALYSIS

Based on the foregoing facts, the government argues that the § 2D1.1(b)(12) enhancement should apply in this case because defendant used the residence on Preston Avenue solely for the purpose of his marijuana distribution activities. The government contends that defendant controlled access to the house, which was not occupied by anyone, and that his drug distribution activities were the primary purpose for using the house. The government bears the burden of proving by a preponderance of the evidence that the enhancement applies. See, e.g., United States v. Villegas, __ F.3d __, 2011 WL 3678165, at *11 (7th Cir. Aug. 23, 2011).

The application of the enhancement in § 2D1.1(b)(12), which was added to the Sentencing Guidelines Manual as a result of the Fair Sentencing Act of 2010, Pub. L. No. 111–220, 124 Stat. 2372, appears to be an issue of first impression as the court has been unable to locate any published

3

or unpublished case law addressing this section. Nevertheless, the application notes to § 2D1.1 provide some guidance on how to apply this enhancement. Specifically, application note 28 states:

> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. § 2D1.1 cmt. n.28. Considering these factors provides somewhat of a mixed bag in this case. On the one hand, the government acknowledges that the defendant did not own or rent the house on October 26, 2010, the date that the marijuana shipment arrived. On the other hand, defendant acknowledged in his plea agreement that he controlled access to the house and that receiving the drug shipment was defendant's primary use of the premises.

With regards to the last factor listed in the application note concerning "how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance," the government speculates that defendant would have continued to use the house for his drug distribution activities had he not been arrested. The government concedes, however, that the house was only used one time by the defendant. This is the weak link in the government's argument and the reason that the court declined to impose the enhancement.

The enhancement in § 2D1.1(b)(12) only applies when the defendant "maintained" a premises for purposes of manufacturing or distributing a controlled substance. The use of the word "maintained" is significant, especially considering that this particular enhancement was linked to

4

21 U.S.C. § 856 in the Fair Sentencing Act. Section 856 makes it unlawful to, among other things, "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1). Obviously, § 856 provides much broader prohibitions than what triggers the guideline enhancement, which only applies to maintaining a premises for manufacturing or distributing, and it is noteworthy that Congress chose to only require a sentencing enhancement for maintaining.[2]

Within the context of § 856, the Seventh Circuit has recently discussed what it means to "maintain" a drug house. In <u>United States v. Acosta</u>, the court explained that "an individual 'maintains' a drug house if he owns or rents premises, or exercises control over them, and <u>for a sustained period of time</u>, uses those premises to manufacture, store, or sell drugs, or directs others to those premises to obtain drugs." 534 F.3d 574, 591 (7th Cir. 2008) (emphasis added). It is reasonable to apply the same definition of "maintains" when considering the § 2D1.1(b)(12) enhancement. Under this definition, the defendant's single use of the residence to receive a drug shipment does not qualify as maintaining a premises for drug distribution because he did not use the premises "for a sustained period of time."

### III. CONCLUSION

For these reasons, the court overruled the government's objection and declined to impose the 2-level enhancement under § 2D1.1(b)(12).

---

[2]Although the enhancement in § 2D1.1(b)(12) was ultimately drafted by the Sentencing Commission, in the Fair Sentencing Act, Congress specifically directed the Sentencing Commission to "review and amend the Federal sentencing guidelines to ensure an additional increase of at least 2 offense levels if . . . the defendant maintained an establishment for the manufacture or distribution of a controlled substance, as generally described in section 416 of the Controlled Substances Act (21 U.S.C. 856)." 124 Stat. at 2373.

5

Date: August 31, 2011                    ENTER:

*[signature]*

FREDERICK J. KAPALA
District Judge